# Exhibit A

LII.10/29/18.15:06:09.35117

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT OF THE COUNTY OF OA**



OAKLAND
COUNTY  10-114575-CZ

JUDGE DANIEL P. O'BRIEN
SMITH,KEITH  v  CHASE HOME FI

KEITH SMITH

    Plaintiff,

    v.

CHASE HOME FINANCE, LLC

    Defendant.

_____

HOPKINS & ASSOCIATES, PLC
Attorney for Plaintiff
Crystal N. Hopkins (P70792)
100 West Big Beaver Rd.
Suite 200
Troy, Michigan 48084
(248) 345-3833

BY: _____
DEPUTY COUNTY CLERK
2010 OCT 29  PH 2: 07
RECEIVED FOR FILING
OAKLAND COUNTY CLERK

_____

## COMPLAINT

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

NOW COMES the Plaintiff, Keith Smith, by and through his attorney, Hopkins &

Associates, PLC, and files his Complaint against the Defendant, Chase Home Finance LLC.

Plaintiff states as follows:

## I. INTRODUCTION

Plaintiff brings this action for money damages, under the Real Estate and Settlement

Procedures Act and state law due to Defendant's predatory lending practices and

1

LTI.10/29/10.15:56:09.35118

violations of federal and state law. Plaintiff also seeks declaratory relief under M.C.R. §
3310.

## II.    PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Keith Smith, is an individual residing at 330 Roth Blvd., Clawson, Michigan.

2. Defendant Chase Home Finance LLC (Chase) is a New York corporation and does
   business within the state of Michigan.

3. Defendant Chase is the originating lender of the promissory note and mortgage at issue in
   this matter and is engaged in the business of regularly extending or offering to extend
   consumer credit for which a finance charge is imposed or which, by written agreement, is
   payable in more than four installments.

4. A copy of the Mortgage is attached hereto and labeled Exhibit A.

5. Nondefendant First Source is a Michigan corporation and does business in the state of
   Michigan.

6. Nondefendant First Source served as the mortgage broker and received compensation as
   such for the promissory note and mortgage at issue in this matter.

## III.    FACTUAL ALLEGATIONS

7. Plaintiff purchased the home located at 330 Roth Blvd., Clawson, Michigan in 2004.

8. Plaintiff closed a mortgage on April 15, 2004 to purchase the home.

9. The terms of the loan included the following:

   a.  A total loan amount of $143,216;

   b.  An "amount financed" of $139,708.02;

2

LII.10/29/10.15:06:09.35119

   c.  A "finance charge" of $181,212.31. A copy of the Final Truth in Lending

       Disclosure Statement is attached hereto and labeled Exhibit B.

   d.  Monthly payments of $928.67 per month, decreasing to $927.95 per month after

       12 months, and decreasing to every 12 months thereafter until reaching $870.20

       per month for 216 months and a final payment of $860.17 scheduled for May 1,

       2034. *See* Exhibit B, Final Truth in Lending Disclosure Statement.

   e.  A disclosed annual percentage rate of 6.705% and an initial note rate of 6.125%.

       A copy of the Note is attached hereto and labeled Exhibit C.

   f.  Fees and closing costs, including but not limited to a loan origination fee to First

       Source in the amount of $705, a commitment fee to Chase Manhattan Mortgage

       Corp in the amount of $295 and a tax related service fee to 1st American Tax

       Service in the amount of $69.00. A copy of the Final Settlement Statement (HUD-

       1) is attached hereto and labeled Exhibit D.

   g.  First Source also received a premium yield adjustment, also known as a yield

       spread premium, in the amount of $2,685.30 directly from Chase. The yield

       spread premium is disclosed on line 808 of the HUD-1. *See* Exhibit D, Final

       Settlement Statement (HUD-1).

10. Plaintiff did not receive the closing documents prior to close and at the closing Plaintiff

    was rushed through signing the documents and did not have time to adequately review

    each document.

11. Upon information and belief, Plaintiff was not informed of the charge for the yield spread

    premium.

LII.18/29/10.15:86:89.35128

12. A foreclosure sheriff's sale is scheduled for November 2, 2010. A copy of the

Foreclosure Notice is attached hereto and labeled Exhibit E.

## IV.   CLAIMS

### COUNT 1
**Real Estate Settlement Procedures Act (Illegal Kickback)**

13. Plaintiff incorporates the previous paragraphs by reference.

14. The transaction between Plaintiff and Defendant is a federally related mortgage loan

within the meaning of the Real Estate Settlement Procedures Act (RESPA).  12 U.S.C. §

2602(1) *et seq.*

15. The activities of Defendant in this transaction are settlement services within the meaning

of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601(3).

16. As part of the transaction, Plaintiff paid fees to Defendant for various settlements services

in conjunction with the federally related mortgage loan.

17. Upon information and belief, nondefendant First Source violated the Real Estate

Settlement Procedures Act by:

   a.   Accepting fees, kickbacks or other things of value, in the form of a yield spread

   premium, from Defendant Chase pursuant to an agreement or understanding that

   business incident to or a part of a real estate settlement service involving federally

   related mortgage loans in violation of 12 U.S.C. § 2607(a) and 24 C.F. R. §

   3500.14.

18. Upon information and belief, Chase violated the Real Estate Settlement Procedures Act

by:

4

LII.10/29/10.15:86:09.35121

a.  Giving or accepting a portion, split, or percentage of charges made or received, in the form of a yield spread premium, for the rendering of real estate settlement services in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

19. Plaintiff received no identifiable benefit in exchange for the yield spread premium according to the HUD-1.

20. Plaintiff's total closing costs for the subject mortgage were $7,039.49, of which Plaintiff paid $1000 by check and Plaintiff received a seller concession in the amount of $1000. Plaintiff paid the remaining closing costs by taking a simultaneous second mortgage in the amount of approximately $28,585.55.

21. It appears that the yield spread premium paid by Chase to First Source in the amount of $2,685.30 was tied solely to the extent to which the broker was able to obtain a higher interest rate for Plaintiff's loan.

22. As a result of these violations of the Real Estate Settlement Procedures Act, Defendant is liable to Plaintiff for monetary damages in the amount of three times the amount of settlement charge paid directly or indirectly by Plaintiff pursuant to 12 U.S.C. § 2607(d)(2) and costs under 12 U.S.C. § 2607(d)(5).

**COUNT 2**
**Michigan Mortgage Brokers, Lenders and Servicers Act**

23. Plaintiff incorporates the previous paragraphs by reference.

LII.10/29/10.15:86:09.35122

24. Upon information and belief, Chase and First Source, are licensed or registered, or should be licensed or registered, under the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, M.C.L. 445.1651 *et. seq.*

25. The transaction at issue in this matter is a mortgage loan within the meaning of the Act, M.C.L. 445.1651a(n).

26. Defendant violated the Act, M.C.L. 445.1672 and M.C.L. 445.1673, by the following actions, including but not limited to:

    a.  Failing to conduct their business in accordance with the Act and other laws;

    b.  Engaging in fraud, deceit, and/or material misrepresentations in connection with this transaction;

    c.  Charging Plaintiff fees beyond those that were reasonable, necessary, actually incurred by Defendant in connection with this transaction; and

    d.  Inducing the plaintiff to enter into a transaction which provided little or no benefit to the plaintiff but were arranged for the primary and/or sole purpose of generating excessive fees for the defendant.

27. As a results of Defendant's violations of this Act, Plaintiff is entitled to statutory damages of $250 per violation or actual damages, whichever is greater, costs and attorney's fees under M.C.L. §445.1681(c).

**COUNT 3**
**Fraud**

28. Plaintiff incorporates the previous paragraphs by reference.

LII.10/29/10.15:06:89.35123

29. Defendant Chase misrepresented material information regarding the mortgage transaction, including but not limited to increasing plaintiff's interest rate due to the payment of a yield spread premium without informing Plaintiff.

30. Defendant Chase knew that the representations were false, or acted with reckless disregard to the truth.

31. Defendant Chase made these material misrepresentations to Plaintiff with the intent that Plaintiff rely upon them.

32. Plaintiff acted in reliance upon the material misrepresentations.

33. As a direct and proximate result of the material misrepresentations, Plaintiff suffered damages including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, and other costs.

34. As a direct and proximate result of the material misrepresentations, Plaintiff suffered damages including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, and other costs.

## COUNT 4
## Civil Conspiracy

35. Plaintiff incorporates the previous paragraphs by reference.

36. Defendant Chase acted in concert pursuant to a common design to and plan to induce plaintiff to enter into this mortgage transaction which had little or no benefit to him, including but not limited to providing the funding for the scheme.

37. Defendant illegally, maliciously and wrongfully conspired with the intent to and with the purpose of inducing Plaintiff to enter into this mortgage which had little or no benefit to him.

7

LII.10/29/10.15:86:09,35124

38. The civil conspiracy resulted in damaging the plaintiff including but not limited to increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, and other costs.

### COUNT 5
### Equal Credit Opportunity Act

39. Plaintiff incorporates the previous paragraphs by reference.

40. Defendant regularly extend, renew or continue credit, or arrange for the extension, renewal, or continuation of credit and are creditors within the meaning of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691a(e) and Regulation B, 12 C.F.R. § 202.2(1).

41. Plaintiff applied for a mortgage with nondefendant First Source with specific terms.

42. Defendant Chase's refusal to grant Plaintiff credit on substantially the terms requested was an adverse action, defined at 15 U.S.C. § 1691(d)(6).

43. Defendant were required to provide Plaintiff with a notice of the action taken on the application and a statement of the reasons for the action, or a statement of the Plaintiff's right to a statement of those reasons, within 30-days after Plaintiff's application, pursuant to 15 U.S.C. § 1691(d).

44. Neither Defendant provided any oral or written notice of an adverse action prior to closing, in violation of 15 U.S.C. § 1691(d).

### V.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following relief:

8

LT1.18/29/10.15:86:09.35125

A. Plaintiff requests that the Court permanently enjoin Defendant Chase from enforcing the contract as it is voidable due to fraud on the contract;

B. Monetary damages in the amount of three times any and all settlement services paid directly or indirectly by Plaintiff pursuant to 12 U.S.C. § 2607(d)(2);

C. Monetary damages for actual and punitive damages pursuant to 15 U.S.C. § 1691e(b);

D. Statutory and actual damages in an amount to be determined by the court;

E. Plaintiff requests that the Court declare the contract void due to fraud on the contract;

F. Costs and attorney's fees under 12 U.S.C. § 2607(d)(5), 15 U.S.C. § 1691e(d) and M.C.L. § 445.1681(c).

G. Such other relief as the Court deems proper.

Respectfully Submitted,

HOPKINS & ASSOCIATES, PLC

Crystal N. Hopkins (P70792)
Attorney for Plaintiff
100 West Big Beaver Rd., Ste. 200
Troy, MI 48084
248.345.3833

October 29, 2010

## JURY DEMAND

Plaintiff demands a trial by jury.

HOPKINS & ASSOCIATES, PLC

Crystal N. Hopkins (P70792)
Attorney for Plaintiff
100 West Big Beaver Rd., Ste. 200
Troy, MI 48084
248.345.3833

October 29, 2010

9

LII.10/29/10.15:06:09.35126



LTI.10/29/10.15:06:09.35127

# MORTGAGE

**State of Michigan**

FHA Case No.

261-8732472-703

THIS MORTGAGE ("Security Instrument") is given on April 15, 2004
The Mortgagor is
Keith J. Smith Unmarried

, whose address is

2411 Samoset, Royal Oak, MI 48073
("Borrower"). This Security Instrument is given to

Chase Manhattan Mortgage Corporation

which is organized and existing under the laws of The State of New Jersey , and
whose address is 343 Thornall Street, Edison, NJ 08837
("Lender"). Borrower owes Lender the principal sum of
One hundred forty-three thousand two hundred sixteen and 00/100
Dollars (U.S. $ 143,216.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
May 1, 2034 . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

**FHA Michigan Mortgage - 4/96**
-4R(MI) (9802)          Amended 2/98
Page 1 of 8                   Initials: _____
VMP MORTGAGE FORMS - (800)521-7291



LII.10/29/10.15:06:09.35128

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in    OAKLAND County, Michigan:

## See attached Schedule A

which has the address of

330 Roth Blvd, Clawson                            [Street, City],

Michigan    48017             [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

 -4R(MI) (9802)

Page 2 of 8

Initials: _____

LII.18/29/18.15:86:89.35129

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

 -4R(MI) (9802)

Initials._____

LII.10/29/10.15:06:09.35130

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 -4R(MI) (9802)

Initials: _____

LII.18/29/10.15:06:09.35131

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

 -4R(MI) (9802)

Initials: _____

LI1.10/29/10.15:96:09.35132

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Initials _____

 -4R(MI) (9802)

LII.10/29/10.15:06:09.35133

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 17 or applicable law.

18. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

19. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider



LII.10/29/18, 15:06:09.35134

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     Keith J. Smith            -Borrower

_____     _____ (Seal)
                                                               -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                        -Borrower


**STATE OF MICHIGAN,**                                    **County ss:**

The foregoing instrument was acknowledged before me this April 15, 2004
                                                              (date)
by
Keith J. Smith




(person acknowledging)


My Commission Expires:

                        _____
                        Notary Public,
                                              County, Michigan

This instrument was prepared by:

MAIL TO:   Chase Manhattan Mortgage Corporation
           Final Documents
           1500 N. 19th Street  6 North
           Monroe, LA  71201
           Loan # 1687365352

-4R(MI) (9802)              Page 8 of 8



LII.10/29/18.15:06:09.35136

# TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Chase Manhattan Mortgage Corporation
    Freedom Square II, Suite 260, 6000 Freedom Square Dr.
    Independence, OH  44131

☐ Preliminary    ☒ Final

*DATE* 04/15/04
*LOAN NO.* 1687365352
*Type of Loan* FHA

BORROWERS: Keith J. Smith

          30 Year Fixed

ADDRESS:    2411 Samoset
CITY STATE/ZIP: Royal Oak, MI  48073
PROPERTY:    330 Roth Blvd, Clawson, MI  48017

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.705 % | $ 181,212.31e | $ 139,708.02 | $ 320,920.33 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 12 | $ 928.67 | 06/01/04 | | | |
| 12 | $ 927.95 | 06/01/05 | | | |
| 12 | $ 927.18 | 06/01/06 | | | |
| 12 | $ 926.36 | 06/01/07 | | | |
| 12 | $ 925.48 | 06/01/08 | | | |
| 12 | $ 924.56 | 06/01/09 | | | |
| 12 | $ 923.57 | 06/01/10 | | | |
| 12 | $ 922.53 | 06/01/11 | | | |
| 12 | $ 921.41 | 06/01/12 | | | |
| 12 | $ 920.23 | 06/01/13 | | | |
| 12 | $ 918.97 | 06/01/14 | | | |
| 11 | $ 917.64 | 06/01/15 | | | |
| 216 | $ 870.20 | 05/01/16 | | | |
| 1 | $ 860.17 | 05/01/34 | | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature.    ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☐ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 330 Roth Blvd, Clawson, MI  48017

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms.
☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: You must obtain an insurance policy and a flood insurance policy, if applicable, naming Chase Manhattan Mortgage Corporation as a loss payee. You may obtain these policies from any company you want that is acceptable to Chase Manhattan Mortgage Corporation.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 4.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not   have to pay a penalty.
☒ may ☐ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____        _____
Keith J. Smith               BORROWER/DATE                      BORROWER/DATE

_____        _____
                          BORROWER/DATE                      BORROWER/DATE

LII.10/29/10.15:06:09.35137



LII.10/29/10.15:06:09.351887                                    1687365352

# NOTE

**Multistate**

| FHA Case No. |
| --- |
| 261-8732472-703 |

April 15, 2004

[Date]

330 Roth Blvd
Clawson, MI  48017
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Chase Manhattan Mortgage Corporation
343 Thornall Street, Edison, NJ  08837
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One hundred forty-three thousand two hundred sixteen

Dollars (U.S. $  143,216.00                      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six & 125/1000
percent (  6.125                %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June, 1st           , 2004          . Any principal and interest remaining on the first day of  May 2034           , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at Chase Manhattan Mortgage Corporation, 343 Thornall Street
Edison, NJ  08837                                              or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 870.20            . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

LII. 10/29/18. 15:86:89 #35139

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
                          -Borrower

_____ (Seal)
Keith J. Smith            -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

LII.10/29/10.15:06:09.35148



LII.18/29/10.15:86:89.35141

A. **Settlement Statement**

U.S. Department of Housing and Urban Development

Seaver Title Company

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☒ Conv. Unins. | 6. File Number FM-324003-O SU | 7. Loan Number 1687365352 |
| 4. ☐ VA   5. ☐ Conv. Ins. | | 8. Mortgage Insurance Case Number 261-8732472-703 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Keith J. Smith 2411 Samoset Rd Royal Oak, MI 48073 | Kyle F. Wagner Terri L. Wagner 330 Roth Blvd Clawson, MI 48017 | Chase Manhattan Mortgage Corp 6000 Freedom Square Dr Independence, Ohio 44131 |

| G. Property Location | H. Settlement Agent   Seaver Title Company | |
|---|---|---|
| 330 Roth Boulevard Clawson, MI 48017 Oakland County, MI 165, Roths Willow Lawn | Place of Settlement   Phone: 248-625-6100 6751 Dixie Highway Clarkston, MI 48346 | I. Settlement Date 4/15/04 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | 166,000.00 | 401. Contract sales price | 166,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 7,039.49 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes  4/15/04 to 06/30/04 | 418.83 | 406. City/town taxes  4/15/04 to 06/30/04 | 418.83 |
| 107. County taxes  4/15/04 to 11/30/04 | 343.23 | 407. County taxes  4/15/04 to 11/30/04 | 343.23 |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 173,801.55 | 420. Gross Amount Due To Seller | 166,762.06 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 143,216.00 | 502. Settlement charges to seller (line 1400) | 10,547.40 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Seller Concession | 1,000.00 | 504. Payoff of first mortgage loan Flagstar | 128,381.55 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Water Escrow | 200.00 |
| 207. " | | 507. Overnight Processing Fee | 20.00 |
| 208. | | 508. Use 1-Occ-15days039.47 | 592.05 |
| 209. | | 509. Seller Concession | 1,000.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes  to | | 510. City/town taxes  to | |
| 211. County taxes  to | | 511. County taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 145,216.00 | 520. Total Reduction Amount Due Seller | 140,741.00  140,148.95 |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 173,801.55 | 601. Gross amount due to seller (line 420) | 166,762.06 |
| 302. Less amounts paid by/for borrower (line 220) | 145,216.00 | 602. Less reductions in amt. due seller (line 520) | 140,741.00  140,148.95 |
| 303. Cash ☒ From ☐ To Borrower | 28,585.55 | 603. Cash ☒ To ☐ From Seller | 26,721.06  26,613.11 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E, G, H and I, lines 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

_____
Keith J. Smith

Kyle F. Wagner
By:_____
Terri L. Wagner, Attorney-in-fact

_____
Terri L. Wagner

LII.10/29/10.15:06:09.3514Z

OMB No. 2502-0265

| L. Settlement Charges | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $   166,000.00 @ 5.0000 % = $8,300.00 | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $   3,320.00 to   Wilhelm & Associates | | | |
| 702. $   4,980.00 to   C-21 AAA North | | | |
| 703. Commission paid at Settlement | | | 8,300.00 |
| 704. | | | |
| 800. Items Payable In Connection With Loan | | | |
| 801. Loan Origination Fee   .4923 % First Source | | 705.00 | |
| 802. Loan Discount   % | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mortgage Insurance Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808.   Yield Spread Premium to First Source   2,685.30 | | P.O.C. | |
| 809.   Service Release Premium to First Source   2,148.24 | | P.O.C. | |
| 810.   Commitment Fee to Chase Manhattan Mortgage Cor | | 295.00 | |
| 811.   Tax Related Service Fee to 1st American Tax Service | | 69.00 | |
| 900. Items Required By Lender To Be Paid In Advance | | | |
| 901. Interest from   4/15/04 to   5/ 1/04 @ $24.030000   /day for 16 days | | 384.48 | |
| 902. Mortgage Insurance Premium for   12   months to   Dept of HUD | | 2,116.50 | |
| 903. Hazard Insurance Premium for   years to | | | |
| 904. Flood Insurance Premium for   years to | | | |
| 905. | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard Insurance   3   months @ $   42.34   per month | | 127.02 | |
| 1002. Mortgage Insurance   months @ $   per month | | | |
| 1003. City property taxes   5   months @ $   213.22   per month | | 1,066.10 | |
| 1004. County property taxes   months @ $   per month | | | |
| 1005. Annual Assessments   months @ $   per month | | | |
| 1006. Flood Insurance   months @ $   per month | | | |
| 1007.   months @ $   per month | | | |
| 1008.   Aggregate Adj   1   months @ $   562.79   per month | | 562.79 | |
| 1009.   months @ $   per month | | | |
| 1010.   months @ $   per month | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to   Seaver Title Company | | 350.00 | |
| 1102. Abstract or title search   to | | | |
| 1103. Title examination   to | | | |
| 1104. Title insurance binder   to | | | |
| 1105. Document preparation   to | | | |
| 1106. Notary fees   to | | | |
| 1107. Attorney's fees   to | | | |
| (includes above item numbers:   ) | | | |
| 1108. Title insurance   to   SEAVER TITLE COMPANY | | 297.60 | 677.80 |
| (includes above item numbers:   ) | | | |
| 1109. Lender's coverage   $   294.80 for $143,216.00 | | | |
| 1110. Owner's coverage   $   821.00 for $166,000.00 | | | |
| 1111.   Record P.O.A | | | 17.00 |
| 1112. | | | |
| 1113.   Flood Cert to 1st American Flood Service | | 7.00 | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording fees: Deed $   18.00   ; Mortgage $   35.00   ; Releases $ | | 53.00 | |
| 1202. City/county tax/stamps: Deed $   ; Mortgage $ | | | |
| 1203. State tax/stamps: Deed $   1,427.60   ; Mortgage $ | | | 1,427.60 |
| 1204.   Recording Fee | | 20.00 | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey   to   Kem-Tec | | 95.00 | |
| 1302. Pest Inspection to   Oakland Pest Control | | 60.00 | |
| 1303.   Processing Fee to Wilhelm & Associates | | | 125.00 |
| 1304.   Flood Determination to 1st American Flood Service | | 11.00 | |
| 1305.   Mortgage Broker Fee to First Source | | 820.00 | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | 7,039.49 | 10,547.40 |

Keith J. Smith

Kyle P. Wagner
By: _____
Terri L. Wagner Attorney-in-fact

Terri L. Wagner

LII.18/29/10.15:06:09.35143

E

LII.10/29/10.15:86:89.35144

# TROTT & TROTT

### A PROFESSIONAL CORPORATION

| HEADQUARTERS: | GRAND RAPIDS: |
|---|---|
| 31440 Northwestern Hwy - Suite 200 | 4024 Park East Court Suite B |
| Farmington Hills, MI 48334 | Grand Rapids, MI 49546 |
| 248-642-2515 Fax 248-642-3628 | 616-942-0893 Fax 616-942-0921 |



## THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

March, 16 2010

Keith J. Smith
330 Roth Blvd
Clawson, MI 48017-2410

RE: Smith, Keith
330 Roth Blvd
Clawson, MI 48017-2410
T&T # 315568F01
Loan # 1687365352
HUD #261-8732472-703

Dear Borrower(s)
This office represents Chase Home Finance LLC, which is the creditor to which your mortgage debt is owed or the servicer for the creditor to which the debt is owed. This matter was referred to this office to foreclose the mortgage. As of the date of this letter the total indebtedness is:

| Principal Balance | $131,773.10 |
|---|---|
| Unpaid Interest | $3,007.31 |
| Late Charges | $193.28 |
| Escrow Advance | $31.70 |
| Insurance Advances | $54.36 |
| *Total:* | $135,059.75 |

Under the terms of your mortgage, the creditor has elected to accelerate the total indebtedness. It may, however, be possible to reinstate the mortgage, subject to the creditor's approval, by paying all past due installments, late charges, delinquent taxes, insurance premiums, costs and fees incurred in the foreclosure. Requests for reinstatement information must be received and approved by this office before the date of the sheriff's sale. Please call (248) 593-1304 for information concerning reinstatement.

The debt described above will be assumed to be valid by this office, the creditor's law firm, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, dispute the validity of the debt, or any portion thereof. If you notify this office in writing within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain a verification of the debt and a copy of the verification will be mailed to you. If the debt is based on a judgment, a copy of the judgment will be provided for you upon request.

If the creditor named in paragraph one of this letter is not the original creditor, and if you make a written request to this office within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to you.

Written requests should be addressed to:
FAIR DEBT COLLECTION CLERK - FC 3
Trott & Trott, P.C.
31440 Northwestern Highway Ste 200
Farmington Hills, MI 48334-2525

Please contact this office at the aforementioned number if you are on active military duty. To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

Yours very truly,
Trott & Trott, P.C.
FORECLOSURE DEPARTMENT

LII.10/29/10.15:86:09.35146



OAKLAND COUNTY 10-114575-CZ

JUDGE DANIEL P. O'BRIEN
SMITH,KEITH  v  CHASE HOME FI

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT OF THE COUNTY OF OAKL**

KEITH SMITH

      Plaintiff,

      v.

CHASE HOME FINANCE, LLC

      Defendant.

RECEIVED FOR FILING
OAKLAND COUNTY
2010 OCT 29  PH 2: 08
BY: ____ DEPUTY COUNTY CLERK

_____

HOPKINS & ASSOCIATES, PLC
Attorney for Plaintiff
Crystal N. Hopkins (P70792)
100 West Big Beaver Rd.
Suite 200
Troy, Michigan 48084
(248) 345-3833

**MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

      Plaintiff, Keith Smith, by and through counsel, moves this court for a temporary

restraining order pursuant to M.C.R. § 3110 enjoining Defendants from proceeding with the

Sheriff's Sale scheduled for November 2, 2010.

1.    Plaintiff filed this action on or about October 29, 2010, alleging violations of the Real

      Estate and Settlement Procedures Act, Truth in Lending Act, violation of M.C.L. §

      600.3205a(1)(g) and other state law, and seeks restitution in the form of monetary

      damages and rescission of the contract under the theory of common law fraud and the

      Truth in Lending Act.

1

LII.10/29/10.15:86:89.35147

2. Defendants have declared the mortgage in default and have begun foreclosure proceedings, advertising that Plaintiff's home will be sold at a Sheriff's sale on November 2, 2010. A copy of the original foreclosure notice is attached.

3. Plaintiff's counsel attempted to contact defendant's counsel in the foreclosure action, and their office has indicated that they do not have authority to adjourn the sheriff's sale.

4. Plaintiff's Counsel has not yet been able to effect service of the Summons and Complaint in this matter.

5. A temporary restraining order is appropriate in that:

    a. Plaintiff is likely to succeed on the merits of his claim.

    b. Unless Defendant is enjoined and Plaintiff granted his requested relief, plaintiff will be irreparably injured in that Plaintiff will lose his home, potentially becoming homeless, and his home will be without proper adjudication of his claims in this lawsuit.

    c. The public interest will be served by allowing plaintiff to remain in the home, preventing him from potentially becoming homeless. Plaintiff's income declined due to the general economic conditions and Plaintiff was not able to obtain a loan modification that did not require a large down payment.

    d. Because the Sheriff's Sale is scheduled for November 2, 2010, there is not sufficient time to effect service of this motion on Defendants or schedule a hearing prior to the Sheriff's Sale.

The bond requirement of M.C.R. § 3110 should be waived. To require a bond in any substantial amount is effectively to deny plaintiff the relief requested. Plaintiff's income is

scarcely enough to cover his basic living expenses. In addition, defendants are protected by their

first-lien security interest in plaintiff's home. Therefore, additional security in the form of a bond

should be unnecessary. However, if the court determines it must establish a bond, the plaintiff

recommends that his bond be set at the amount of his monthly house payment, $870.20.

**WHEREFORE,** Plaintiff respectfully request that this Court issue a Temporary

Restraining Order enjoining the Defendants from pursuing non-judicial foreclosure, including

the Sheriff's Sale scheduled for Tuesday, November 2, 2010, and for such relief as this Court

deems just and equitable.

Respectfully Submitted,

HOPKINS & ASSOCIATES, PLC

Crystal N. Hopkins (P70792)
Attorney for Plaintiff
100 West Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 345-3833

October 29, 2010

3

LII.18/29/18.15:86:89.35149



**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT OF THE COUNTY OF O.........**

KEITH SMITH

       Plaintiff,

       v.

CHASE HOME FINANCE, LLC

       Defendant.

_____

HOPKINS & ASSOCIATES, PLC
Attorney for Plaintiff
Crystal N. Hopkins (P70792)
100 West Big Beaver Rd.
Suite 200
Troy, Michigan 48084
(248) 345-3833

_____

### ATTORNEY STATEMENT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION

Crystal N. Hopkins, Plaintiff's attorney, states as follows:

1. I am the attorney for Plaintiff in this matter.

2. I made the following attempts to contact Defendants to provide notice of this action and

   resolve the issue of the Sheriff's Sale without the requested temporary restraining order.

   a. I informed Defendant's foreclosure counsel, Trott & Trott P.C., that we intended

   to file this lawsuit. Plaintiff's Counsel requested that Defendant adjourn the

   Sheriff's Sale by phone on October 29, 2010 and by facsimile dated October 29,

   2010.

1

LII.10/29/10..15:06:09.35150

b.  I provided Defendant's counsel with a copy of the pleadings filed in this matter by fascimile dated October 29, 2010.

c.  On October 29, 2010 Defendant's foreclosure counsel indicated that they did not have authority to adjourn the Sheriff's Sale.

d.  Due to the proximity of the Sheriff's Sale date and because Defendants have failed to provide their attorneys with authority to adjourn the Sheriff's Sale, it is necessary to file this Motion for a Temporary Restraining Order.

e.  The Sheriff's Sale is set for November 2, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

HOPKINS & ASSOCIATES, PLC

Crystal N. Hopkins (P70792)
Attorney for Plaintiff
100 West Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 345-3833

October 29, 2010

2

LII.10/29/10.15:06:09.35145

Approved, SCAO

Original - Court
1st copy - Defendant

OAKLAND COUNTY **10-114575-CZ**

| STATE OF MICHIGAN | SUMMONS AND COMPLAINT | |
|---|---|---|
| JUDICIAL DISTRICT | | JUDGE DANIEL P. O'BRIEN |
| JUDICIAL CIRCUIT | | SMITH,KEITH  v  CHASE HOME FI |
| COUNTY PROBATE | | |

RECEIVED FOR FILING
**OAKLAND COUNTY CLERK**
2010 OCT 29 PM 2:07
BY:
DEPUTY COURT

**Court address**
Circuit Court of the County of Oakland

| Plaintiff's name(s), address(es), and telephone no(s). | Defendant's name(s), address(es), and telephone no(s). |
|---|---|
| Keith Smith<br>330 Roth Blvd<br>Clawson, MI 48017<br>734-341-0192 | Chase Home Finance, LLC<br>Jamie Dimon, President<br>3415 Vision Drive<br>Columbus, OH 43219 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>Crystal N. Hopkins P70792<br>100 W. Big Beaver<br>Suite 200<br>Troy, MI 48084<br>248-345-3833 | |

**SUMMONS**  **NOTICE TO THE DEFENDANT:**  In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party
   or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>OCT 29 2010 | This summons expires<br>JAN 28 2011 | Court clerk<br>RUTH JOHNSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| | |
| Place where action arose or business conducted | |

Date 10/29/10

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)